UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
INNOVATIVE TECHNOLOGIES, LLC,

            Plaintiff,

    -against-

NANOPROTECH FL, LLC and EDWARD
KOPSHIN,

           Defendants.
------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-CV-3797 (CBA) (PK)

**AMON, United States District Judge:**

Plaintiff Innovative Technologies, LLC brings this action against Defendants Nanoprotech FL, LLC ("Nanoprotech FL") and Edward Kopshin ("Kopshin"), asserting claims under the Lanham Act, 15 U.S.C. § 1051 et seq.; New York General Business Law, N.Y. Gen. Bus. Law § 349; and New York common law. Plaintiff filed an Amended Complaint on April 13, 2017. (D.E. # 29 ("Am. Compl.").) Before the Court is Defendants' motion to dismiss the Amended Complaint under the forum non conveniens doctrine.[1] (D.E. # 33.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

For purposes of the instant motion, the Court draws the following facts from the pleadings, affidavits, and briefs, and without the aid of discovery or a fact hearing. See Alcoa S.S. Co. v. M/W Nordic Regent, 654 F.2d 147, 149 & n.2 (2d Cir. 1980); see also Acosta v. JPMorgan Chase

---

[1] In their two-page Notice of Motion, Defendants request "an order pursuant to Rule of the Federal Rules of Civil Procedure 12(b)(3) [sic] because of improper venue and the doctrine of forum non conveniens to dismiss this action...." (See D.E. # 33.) The Notice's single citation to the Federal Rules and mention of "improper venue" apparently led Plaintiff to believe that Defendants were seeking a dismissal under Rule 12(b)(3). (See D.E. # 36-9 at 6–7 (describing legal standards relating to Rule 12(b)(3) motions).) But not once in the initial or reply brief do Defendants invoke the Rule or argue that the Eastern District of New York is an "improper venue." Rather, Defendants contend that a forum-selection clause obligates the parties to make their claims in Russia, and that, even if the clause were not binding, common-law principles of forum non conveniens would counsel the Court to dismiss this case. (See generally id.) The Supreme Court has found that the parties may make such arguments in a motion to dismiss pursuant to the forum non conveniens doctrine, not pursuant to Rule 12(b)(3). See Atl. Marine Const. Co. v. U.S. Dist. for the W. Dist. of Tex., 134 S. Ct. 568, 580 (2013).

1

& Co., 219 F. App'x 83, 85 (2d Cir. 2007). Unless noted, the parties have not disputed these facts. Plaintiff is a Russian company that, since 2007, has created anticorrosion lubricants under the NANOPROTECH brand and has distributed the lubricants around the world. (D.E. # 29 ("Am. Compl.") ¶¶ 1, 4–5.) Defendants are a Florida company and its sole owner, the latter of whom served as Plaintiff's exclusive distributor of NANOPROTECH products in the Czech Republic from 2010 to 2012. (Id. ¶¶ 2–3, 9.)

At issue in the case are a trademark and a disputed contract. Plaintiff registered a "NANOPROTECH" trademark with the Russian government on March 24, 2011; with the international Madrid System on January 9, 2014; and with the United States Patent and Trademark Office on December 9, 2014. (Id. ¶¶ 6–8.) Plaintiff alleges that Defendants have registered and profited from numerous trademarks substantially similar to the NANOPROTECH trademark, in violation of federal and New York trademark law. (See Am. Compl. ¶¶ 33–110, 114–39, 176–87.) Plaintiff also contends that Defendants are unlawfully using its original trademark. (See Am. Compl. ¶¶ 111–13, 118–39, 176–87.)

With respect to the agreement, the parties have presented two versions: Contract A and Contract B. Although the parties dispute which one controls, (see generally D.E. # 30), they agree on basic details of the arrangement. On January 14, 2014, Plaintiff entered into an agreement with Kopshin and a predecessor of Nanoprotech FL.[2] Both contracts granted the predecessor the exclusive right to sell NANOPROTECH lubricants in the United States and—contrary to what the

---

[2] Contract A—which Defendants assert governs, (see Decl. of Eduard Kopshin ("Kopshin Decl.") ¶ 3, D.E. # 34-5)—includes an addendum stating that the predecessor's rights and duties transfer to Nanoprotech FL. (See D.E. # 34-6 ("Contract A") at Addendum # 2.) The copy of Contract B presented to the Court includes no such addendum. (See generally D.E. # 34-7 ("Contract B").) Still, Plaintiff—which asserts that Contract B governs, (see Am. Compl., Ex. 6; Kopshin Decl. ¶ 6)—concedes that Nanoprotech FL is the legal successor of the original contracting party. (See Am. Compl. ¶ 15.) Therefore, the Court has no trouble finding that, regardless of which contract controls, the predecessor of Nanoprotech FL, LLC signed the January 14, 2014, agreement, and that Nanoprotech FL may assert its predecessor's rights under the contract.

2

Amended Complaint alleges, (see Am. Compl. ¶¶ 13–14)—Canada. (Contract A §§ 2.3, 14; Contract B §§ 2.3, 14.) The predecessor promised not to sell or promote the lubricants outside the United States and Canada. (See Contract A §§ 14, 15.2; Contract B §§ 14, 15.2.) Both agreements also contain the same forum-selection clause.[3] (See Contract A § 12; Contract B § 12.) Plaintiff alleges that Defendants manufacture, promote, and sell NANOPROTECH products around the world, in violation of the January 14, 2014, agreement. (Am. Compl. ¶¶ 19, 140–47.) Plaintiff also contends that Defendants have tortuously interfered with business relationships between Plaintiff and its exclusive distributors abroad, in violation of New York common law. (Am. Compl. ¶¶ 26–32, 162–75.)

## DISCUSSION

Defendants, who are citizens of Florida,[4] claim that the "commercial courts of St. Petersburg" serve as the appropriate forum for this case. (See, e.g., D.E. # 34 at 13.) They base their argument both on the forum-selection clause in the relevant contract and on general principles of forum non conveniens. Under either analysis, the Court declines to dismiss the case.

### I. Forum-Selection Clause

Defendants' primary argument is that the relevant forum-selection clause compels dismissal. Although the parties dispute which contract applies,[5] the Court need not resolve that

---

[3] According to Kopshin's declaration, Plaintiff has argued that a so-called "Voluntary settlement" agreement modified the forum-selection clauses in Contract A and Contract B. (See Kopshin Decl. ¶ 9.) Kopshin points to nowhere in the record where Plaintiff made such an argument. After reviewing the terms of the "Voluntary settlement," the Court finds that it does not address the forum-selection clauses. (See D.E. # 29, Ex. 11.)

[4] Defendants do not request of a transfer of the lawsuit to a federal court in Florida, pursuant to 28 U.S.C. § 1404.

[5] Each page in both contracts includes a version in Russian and English. (See generally Contract A ("This contract is formulated in Russian and English Languages."); Contract B (same).) Therefore, the Court will rely on the "official English translation" incorporated into each contract. See, e.g., Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F. App'x 612, 616 (5th Cir. 2007) (relying, in a forum non conveniens case, on the "official English translation" of a Portuguese contract).

3

issue at this stage, since the forum-selection provision in both contracts is the same. It reads as follows:

> 12. Arbitration
>
> 12.1. All disputes and differences arising in the course of the contract should be resolved through negotiations between the Parties.
>
> 12.2. Disputes, unresolved through bilateral negotiations, subject to review by a competent court of arbitration in the location of the Seller on the basis of procedural law of the Seller.

(Contract A § 12; Contract B § 12.)

An agreed-upon forum-selection clause is considered prima facie valid and generally should be enforced. See Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720 (2d Cir. 2013). Contrary to what Plaintiff repeatedly suggests in its opposition brief, (see, e.g., D.E. # 36-9 at 9–11), it bears the burden to prove that dismissal is unwarranted where it brings a case in a forum different from that identified in the clause, see LVAR, L.P. v. Bermuda Commercial Bank Ltd. ("LVAR I"), No. 13-CV-9148 (AT), 2015 WL 1267368, at *2–5 (S.D.N.Y. Mar. 18, 2015), aff'd, 649 F. App'x 25 (2d Cir. 2016); cf. Atl. Marine, 134 S. Ct. at 581 (placing burden of proof on plaintiff because it was "defying the forum-selection clause").

In determining the enforceability of a forum-selection clause, the Court must consider (1) whether the forum-selection clause was "reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory" by requiring the parties to bring a dispute in a designated forum; and (3) whether "the claims and parties involved in the suit are subject" to the clause. LVAR I, 2015 WL 1267368, at *2; see also Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014) (quoting Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007)). If the Court answers yes to all three questions, then the forum-selection clause is "presumptively enforceable." LVAR I, 2015 WL 1267368, at *2. Plaintiff may overcome the presumption only by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or

4

that the clause was invalid for such reasons as fraud or overreaching." Martinez, 740 F.3d at 217 (quoting Phillips, 494 F.3d at 383–84). If Plaintiff fails to make this showing, then the clause has "controlling weight" in the forum non conveniens analysis, and the Court must dismiss the case. See LVAR, L.P. v. Bermuda Commercial Bank Ltd. ("LVAR II"), 649 F. App'x 25, 26–27 (2d Cir. 2016) (quoting Atl. Marine, 134 S. Ct. at 581).

As a preliminary matter in conducting this analysis, the Court must determine what law applies. The choice-of-law provision in both contracts points to Russian law. (See Contract A at 1 ("Adaptive law for this contract is the civil law of the Russian Federation."); Contract B at 2 (same).) Yet neither side invokes Russian law in its briefing, and neither side identifies differences between principles of Russian and federal contract law, (see also D.E. # 34 at 6 n.1; D.E. # 36-9 at 10). When parties acquiesce in the application of a forum's law, it is not error for the Court to assume that the foreign law is similar. See, e.g., Martinez, 740 F.3d at 223. The Court thus applies "general contract law principles and federal precedent to discern the meaning and scope of the forum clause." Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 224 n.3 (2d Cir. 2011) (quoting Phillips, 494 F.3d at 385–86).

### A. Whether the Forum-Selection Clauses Were "Reasonably Communicated"

Plaintiff fails to show that the clauses at issue here were not "reasonably communicated" to it. "Absent substantive unconscionability or fraud[,] ... parties are charged with knowing and understanding the contents of documents they knowingly sign." Horvath v. Banco Comercial Portugues, S.A., 461 F. App'x 61, 63 (2d Cir. 2012). Plaintiff argues that it did not receive reasonable notice because (1) the parties cannot agree which of the two contracts controls, and (2) "Plaintiff has specifically alleged" one of the contracts to be "fraudulent and forged." (D.E. # 36-9 at 12.)

Plaintiff's arguments lack merit because, as Defendants note in their briefing, (see D.E. # 34 at 8), each contract adopts the same language for purposes of its forum-selection clause. Although Plaintiff decries as fraudulent one of the contracts, Plaintiff concedes being bound by the other. (See D.E. # 30 at 3–5.) Therefore, no matter which contract is valid, Plaintiff knowingly and voluntarily signed an agreement with the forum-selection clause (Section 12.2) quoted above. Plaintiff had reasonable notice of the provision. See, e.g., Arial Techs. LLC v. Aerophile S.A., No. 14-CV-4435 (LAP), 2015 WL 1501115, at *3 (S.D.N.Y. Mar. 31, 2015) (noting that the provision satisfies the first element of the forum non conveniens analysis when "it appears on the face of the contract that [the plaintiff] signed and now seeks to enforce").

### B. Whether the Forum-Selection Clauses Are Mandatory

Plaintiff argues that "the purported forum selection clause does not mandate objectively and exclusively venue in the Russian Federation." (D.E. # 36-9 at 12.) To the extent Plaintiff contends that the provision is permissive, the Court finds this argument persuasive. In determining whether a forum-selection clause is mandatory under federal common law, the Court must take "initial focus . . . on the language of the contract." Phillips, 494 F.3d at 386. "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." Id. "The general rule in cases containing forum selection clauses is that '[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'" John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51, 52 (2d Cir. 1994) (quoting Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989)).

The Court finds that the clause is permissive, not mandatory. Section 12.2, the forum-selection clause at issue here, is a sentence fragment. It reads: "Disputes, unresolved through bilateral negotiations, subject to review by a competent court of arbitration in the location of the Seller on the basis of procedural law of the Seller." (Contract A at 6–7; Contract B at 5–6.) Without a verb, the only natural reading is permissive. Had the provision included obligatory venue language such as "<u>must be</u> subject to review" or "<u>are to be</u> subject to review," the Court could find it to be a mandatory provision. See, e.g., Phillips, 494 F.3d at 386–87. The clause also lacks any language suggesting that the "competent court of arbitration in the location of the Seller"—that is, a Russian court—is the <u>exclusive</u> jurisdiction for making claims. See John Boutari & Son, Wines & Spirits, 22 F.3d at 52–53; cf. Phillips, 494 F.3d at 386–87. Because the clause "leaves open the possibility that an action could be brought in any forum where jurisdiction can be obtained either inside or outside" Russia, Section 12.2's plain language reflects the permissive nature of the forum-selection clause. See Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A., 760 F.2d 390, 396 (2d Cir. 1985); see also John Boutari & Son, Wines & Spirits, 22 F.3d at 52.

To avoid this conclusion, Defendants offer a "certified translation of the Russian language version of the agreement" that is significantly different from the English version of Section 12.2. (See D.E. # 34 at 9; see also D.E. # 34-2 ("Translation") at 1.) According to the "certified translation," the Russian version of Section 12.2 states the following: "Disputes between the parties unresolved through bilateral negotiations <u>will be reviewed</u> by a competent Commercial court at the location of the Seller and in accordance with the law of procedure of Seller's country." (Translation at 1 (emphasis added).) Given the obligatory venue language included in the

7

"certified translation," Defendants argue that the Court must find the clause a mandatory one. (See D.E. # 34 at 9); see also, e.g., Phillips, 494 F.3d at 386–87.

The Court declines to consider the newly advanced translation. The translation that should govern is the one signed and included in both Contract A and Contract B. See Braspetro Oil Servs., 240 F. App'x at 616. The parties presumably relied upon this translation in executing their agreement. The translation is also the version to which both parties referred throughout their briefing. (See, e.g., D.E. # 34 at 9; D.E. #36-9 at 11.) Finally, the Court notes that the purported translation includes a translator's "affidavit" that was neither notarized nor sworn under penalty of perjury. The purported affidavit therefore fails to comply with 28 U.S.C. § 1746. The Court declines to credit a translation with a deficient supporting affidavit. See, e.g., Skates v. Inc. Vill. of Freeport, No. 15-CV-1136 (SJF), 2017 WL 3017188, at *7 (E.D.N.Y. June 28, 2017); Polanco v. Active Ret. Cmty., Inc., No. 14-CV-4145 (SJF), 2015 WL 12564206, at *10 (E.D.N.Y. Dec. 21, 2015). Upon review of the record, the Court is persuaded that Section 12.2 has neither obligatory venue language nor a mandate that Russia's courts maintain exclusive jurisdiction over claims involving the January 14, 2014, agreement. Therefore, the Court concludes that it is not required to dismiss Plaintiff's claims in light of Section 12.2.

## II. Ordinary Forum Non Conveniens Analysis

Because the Court has found that Section 12.2 is not enforceable, default rules of the forum non conveniens doctrine apply. Defendants now have the "heavy burden" of proof. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007). Although the "forum non conveniens determination is committed to the sound discretion of the trial court," Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249, 257 (1981), the Second Circuit has articulated a three-pronged test to guide the Court's analysis. The Court must (1) "determine the degree of deference

properly accorded to [Plaintiff's] choice of forum"; (2) "consider whether the alternative forum proposed by [Defendants] is adequate to adjudicate the dispute at issue"; and (3) "balance the private and public interests implicated in the choice of forum." Chirag v. MT Marida Marguerite Schiffahrts, 604 F. App'x 16, 20 (2d Cir. 2015); see also Iragorri v. United Techs. Corp., 274 F.3d 65, 73–74 (2d Cir. 2001) (en banc). Because Defendants fail to make their case on the second element, the Court does not discuss the other two. See Norex Petroleum Ltd. v. Access Indus., Inc. ("Norex Petroleum II"), 416 F.3d 146, 157, 160 (2d Cir. 2005) ("If the movant fails to [demonstrate adequacy of the alternative forum], the forum non conveniens motion must be denied regardless of the degree of deference accorded plaintiff's forum choice.").

The second element has two prongs. Defendants must show that (1) Defendants "are amenable to service of process there," and that (2) the alternative forum "permits litigation of the subject matter of the dispute." Id. at 157 (quoting Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003)). As stated above, Defendants assert that the "commercial courts of St. Petersburg" constitute the adequate alternative forum. (See, e.g., D.E. # 34 at 13.) Because Defendants represent that they are amenable to service for a lawsuit in those commercial courts, (see id.), they have satisfied the first prong of the adequacy test, see Norex Petroleum II, 416 F.3d at 157.

However, Defendants fail to offer any proof on this second prong. The record lacks any indication that St. Petersburg's commercial courts permit litigation of any of Plaintiff's claims. Defendants have offered no expert testimony or other evidence explaining the jurisdiction of the commercial courts. As stated above, the forum-selection clause provides that a "competent court of arbitration in the location of the Seller" may hear disputes, but Defendants do not offer any evidence showing that the commercial courts are "competent" for purposes of the January 14,

2014, agreement. Defendants stated at oral argument that they cannot afford to produce expert affidavits or marshal other evidence, but that fact hardly justifies the basic deficiency in their proof. See, e.g., DigitAlb, Sh.a v. Setplex, LLC, No. 17-CV-4102 (WHP), 2018 WL 377381, at *9 (S.D.N.Y. Jan. 11, 2018) ("Nor has [the defendant] submitted any affidavits or other evidence that would allow this Court to determine whether any of its proposed fora are adequate.").

Defendants' submission on the second prong consists entirely of citations to three unpersuasive cases. (See D.E. # 34 at 13.) Erausquin v. Notz, Stucki Management (Bermuda) Ltd., 806 F. Supp. 2d 712 (S.D.N.Y. 2011), deals with Swiss courts. See id. at 726. Although the district court in Norex Petroleum Ltd. v. Access Industries, Inc. ("Norex Petroleum I"), 304 F. Supp. 2d 570 (S.D.N.Y. 2004), determined that the Russian courts were adequate for the claims in that case, see id. at 577–80, the Second Circuit vacated the opinion and found the lower court's reasoning erroneous, see Norex Petroleum II, 416 F.3d at 157–60, 162. Finally, the district court in Overseas Media, Inc. v. Skvortsov, 441 F. Supp. 2d 610 (S.D.N.Y. 2006), aff'd, 277 F. App'x 92 (2d Cir. 2008), relied on evidence that there was already a pending action in "Leninsky District Court" in Russia, see id. at 617. However, the court in Overseas did not address the New York common-law claims at issue here. Moreover, whereas the Overseas court had before it a proffered "description" of the analogous action in Russia, see id., this Court has no evidence before it concerning the jurisdiction of the "commercial courts of St. Petersburg."

Therefore, Defendants fail to carry their "heavy burden" of proving the adequacy of St. Petersburg's commercial courts. See Sinochem Int'l, 549 U.S. at 430. Defendants accordingly fail to show that dismissal is warranted under the forum non conveniens doctrine.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss the Amended Complaint under the <u>forum non conveniens</u> doctrine. (D.E. # 33.) The Court ORDERS the parties no later than March 29, 2018, to file a letter informing the Honorable Peggy Kuo, United States Magistrate Judge, of proposed next steps. (<u>See</u> D.E. dated Apr. 13, 2017.)

SO ORDERED.

Dated: March 22, 2018
      Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge